UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VICTORIA K.,

              Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

19-CV-6810-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18)

Plaintiff Victoria K.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and defendant's motion (Dkt. No. 16) is granted.

## BACKGROUND[2]

On August 19, 2015, plaintiff applied for DIB and SSI alleging disability beginning on January 1, 2013, due to mental health issues, personality disorder, PTSD, anxiety,

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

OCD, back pain with bulging discs, and hypothyroid.  (Tr. 354)[3]   Plaintiff's claim was denied at the initial level, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ") on December 3, 2018.  (Tr. 101-26)  The Appeals Council denied further review of the ALJ's decision on September 3, 2019.  (Tr. 1-7)  This action followed.  (Dkt. No. 1)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

---

[3] References to "Tr." are to the administrative record in this case.  (Dkt. Nos. 5-6)

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  *Id.* §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical

opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

4

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).   The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."   *Id.* §404.1520(f).   If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1).   If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of January 1, 2013.  (Tr. 107)  At step two, the ALJ found that plaintiff did not have a severe impairment between her alleged onset date through December 31, 2013, her date last insured.  (Tr. 107-08)  The ALJ proceeded to find that since plaintiff's filing date of August 19, 2015, she had the severe impairments of affective disorder, anxiety-related disorder, personality disorder, and polysubstance abuse disorder.  (Tr. 110)   At step three, the ALJ determined that plaintiff met Listing 12.04 for depressive, bipolar, and related disorders.  (Tr. 111-13)  If plaintiff stopped substance use, she would continue to have severe impairments, but would not have impairments the met or medically equaled the Listings.  (Tr. 113-15)

Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform:

> a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to performing simple, repetitive work-related tasks in a non-assembly line or production-paced setting; she can have no interaction with the public, either face-to-face or otherwise, and only occasional interaction with supervisors and co-workers, but she cannot perform team/tandem or collaborative-type work with co-workers, but she can work around other people; she is able to make simple work-related decisions; and she can adapt to simple changes in a routine work setting, like an introduction to a new co-worker, a change in work location, or a new supervisor.

(Tr. 115)  Proceeding to step four, the ALJ found that plaintiff had no past relevant work. (Tr. 119)  At step five, the ALJ determined that absent substance abuse, plaintiff could perform the representative jobs of hand packager, housekeeper, and document preparer. (Tr. 119-20)   Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act.  (Tr. 120)

IV.   _Plaintiff's Challenges_

Plaintiff contends that the Commissioner's determination must be reversed or remanded because the ALJ erred in his materiality analysis of plaintiff's substance abuse and failed to evaluate plaintiff's borderline personality disorder against Listing 12.08 (personality and impulse-control disorders).  (Dkt. No. 12-1 at 22-36)

First, plaintiff argues that the ALJ did not have sufficient evidence to find that her substance abuse was material because her mental health and not substance abuse that primarily impacted her ability to work or function.  (Dkt. No. 12-1 at 24-25)  Additionally, plaintiff contends that there is no opinion by a medical provider that plaintiff's substance abuse was material.  (_Id._ at 24)

The pertinent regulations provide that, [i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 404.1535 (a); § 416.935(a) (same).  As previously explained by this Court:

> The inquiry in determining whether alcoholism or drug addiction are contributing factors material to the determination of disability is whether the claimant would still meet the definition of disability under the Act if he or she stopped using drugs or alcohol. _See_ 20 C.F.R. §§ 404.1535(b)(1), and 416.935(b)(1). If the claimant's remaining limitations would not be disabling, the claimant's drug or alcohol addiction is found to be a contributing factor material to the determination of disability and benefits will be denied. 20 C.F.R. § 404.1535(b)(2).

_Santiago v. Berryhill_, No. 17-CV-00728, 2019 WL 289778, at *2 (W.D.N.Y. Jan. 23, 2019); _see also_ Social Security Ruling ("SSR") 13-2p; Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism ("DAA"), SSR 13-2P (S.S.A. Feb. 20, 2013).  It is the

plaintiff's burden to establish that substance abuse is immaterial to the disability determination. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

The ALJ summarized in detail plaintiff's longitudinal history of substance abuse and co-morbid mental impairments. (Tr. 111-19) He observed that plaintiff engaged in "extensive" substance abuse during the period under review. (Tr. 111) While plaintiff had substantial inpatient hospitalizations and decreased functioning, the ALJ found that these were "directly tied to her substance abuse." (Tr. 119)

The ALJ discussed plaintiff's multiple hospitalizations, including an inpatient mental health treatment stay from August to October of 2015. (Tr. 112) During that stay, plaintiff admitted she had not been using her medications and had been using THC daily. (Tr. 444, 479-8, 486, 2333) The day after her discharge, plaintiff presented to the emergency room reporting a desire to hang herself and requested to "go inpatient again." (Tr. 112) She had not taken her medications since her discharge. (Tr. 112, 494) Inpatient was not recommended by the examining physician as plaintiff tended to "regress" in the hospital. (Tr. 112, 495)

The following month, plaintiff again presented to the emergency room reporting that she was feeling suicidal and hearing voices telling her to kill herself for two weeks. (Tr. 112, 445, 455) She admitted to drinking and using THC daily. (Tr. 112, 455, 446, 731) Plaintiff was discharged the following day after she slept through the night and reported that she no longer had suicidal ideation, with improved mental status noted on examination and lack of criteria for involuntary psychiatric admission. (Tr. 112-13, 445-46, 452-53, 455)

On December 1, 2015, plaintiff underwent a "safety check" stemming from a previous emergency room visit. She reported smoking THC daily. (Tr. 113, 452-53) On December 10, plaintiff told her social worker that she had run out of her medication. (Tr. 829) A mental status examination from that date was unremarkable and she appeared stable. (Tr. 831-32) Later that same month, at a medication management appointment, she told her physician that she did well with medication and needed to restart them. (Tr. 842-45)

In July, 2016, plaintiff presented to the Mobile Crisis Team with suicidal ideation. (Tr. 113, 988) She sought inpatient treatment because it "ke[pt] her safe." (Tr. 988)

Plaintiff was hospitalized in August, 2017, for suicidal ideation. (Tr. 112, 1332) She was recently kicked out of her housing for "getting high" and had smoked marijuana the day prior. (Tr. 1332) Plaintiff reported drinking alcohol, and using marijuana and cocaine. (Tr. 1333) Additionally, she reported that her case at Strong Ties Service (outpatient mental health services) was closed due to her frequent no-shows, attributable to her drug use. (Tr. 1335) Plaintiff again had not been taking her medications consistently and tested positive for THC. (Tr. 1343, 1355, 1370)

Plaintiff completed treatment for chemical dependency from May 21, 2018, through June 4, 2018 for alcohol, cannabis, and cocaine use. (Tr. 113, 4081-82)

In considering this evidence, the ALJ found that plaintiff "would have an extreme limitation adapting or managing herself when considering her substance abuse." (Tr. 113)

With respect to plaintiff's alleged affective disorder, anxiety-related disorder, and personality disorder, the ALJ found insufficient evidence to support a finding on ongoing disability absent her polysubstance abuse disorder. (Tr. 116) Acknowledging a

"significant history of mental health problems," they were directly tied to her extensive, longstanding substance abuse. (Tr. 116) He noted that her mental health visits generally reflected a finding that, when sober, plaintiff's mental impairments were better managed, and that during periods of sobriety plaintiff had better compliance with prescribed treatment.   The ALJ again cited specific examples from the record, including multiple reports by plaintiff that she was doing well and was stable during periods of sobriety and when taking her prescription medications as well as consistent, unremarkable mental status examinations when she was not abusing substances.   Even during periods of plaintiff's substance abuse, multiple mental status examinations revealed normal cognitive functioning. (Tr. 116-17)

Specifically, the ALJ observed that after a two-month impatient stay in fall of 2015, plaintiff reported doing better with no suicidal thoughts.  Mental status examination was largely normal other than constricted affect.  (Tr. 116)  In December, 2015, plaintiff acknowledged doing better on medications, and that they kept her stable. (Tr. 116-17)

In October, 2016, plaintiff reported sobriety, had no overt PTSD symptoms and was tolerating her medication without side effects.  (Tr. 117)  Her objective mental status examination was consistently mild, with cooperative demeanor, normal motor function, direct eye contact, euthymic mood, constricted affect, normal thought process and content, normal concentration, intact memory, average intelligence, and fair insight and judgment. She was still sober the following month with largely normal mental status examination, good energy and concentration, normal sleep, and fair appetite.  (Id.)

In January and February of 2017, plaintiff was again described as stable with consistent mental status examination. (Tr. 117)  The following month, she reported that

she was no longer using marijuana, and her attendance improved.  In April, 2017, plaintiff was living in supported housing and her anxiety was doing well.  Again, mental status examination was consistently mild. (*Id.*)

Between January and May, 2017, plaintiff reported periods of sobriety.  She was repeatedly described as stable, with increased attendance when she was not using marijuana. She reported doing well overall and was tolerating her medications without side effects. Objective mental status examinations were consistently normal and/or mild during this time.  (Tr. 117)

In October, 2017, plaintiff sought mental health treatment.  Despite her admitted substance abuse, she presented with normal hygiene and motor function, had depressed mood and affect, normal thought process and content, some rumination, normal memory, normal attention and concentration, average fund of knowledge, and poor insight and judgment.  (Tr. 117)

Plaintiff reported another period of sobriety while in treatment in November, 2017. Mental status examination was again largely normal.  (Tr. 117)  The following month, plaintiff reported increased dysphoric mood in the context of a stressful event, drug abuse, and emotional distress.  She had no deficits on mental health examination.  (*Id.*)

The ALJ concluded that the "the periods where the claimant was substantially impaired and required inpatient care correlated with ongoing substance abuse." (Tr. 117)

The Court finds that the ALJ's materiality finding was supported by substantial evidence.  Contrary to her assertion, the ALJ did acknowledge plaintiff's frequent inpatient treatment and mental impairments. Yet the record also reveals evidence that plaintiff's

substance abuse significantly interfered with her ability to maintain housing, personal relationships, and treatment for her mental health impairments.

For example, plaintiff attributed her substance abuse for her lack of motivation, which lead to missing appointments and being removed from housing facilities. (Tr. 1332, 1335, 1365, 1588, 1598)  By the end of the relevant period, her mental health treatment was directly linked to her efforts to stop using drugs. (Tr. 4081)  Physicians noted that plaintiff's substance was creating a "barrier to following treatment recommendations," and her treating counselor repeatedly attempted to get plaintiff to stop using drugs in an effort to improve her symptoms. (Tr. 979, 1003, 1321)

In November, 2015, plaintiff told her counselor that she had been "somewhat banned from the hospital" due to her frequent emergency room visits, but she went there to feel safe. (Tr. 3209)

In May, 2016, despite presenting as a psychological emergency, plaintiff admitted that she was not suicidal, her medications helped, and that she was using 3-4 "blunts" per day. (Tr. 923)  She reported that THC decreased her motivation. (Id.)  Even with drug use, her mental status was normal, including concentration, memory, and cognitive functioning. (Tr. 925)

In July, 2016, she reported to her treating counselor that "marijuana has control of my life right now," and a month later expressed concern that her substance abuse was out of control. (Tr. 979, 1003)

After 28 days clean on October 11, 2016, plaintiff was found to be in stable condition. (Tr. 1066)  On November 17, 2016, plaintiff reported improved attendance and was not using THC. (Tr. 1119)  A recent toxicology screen was negative. (Tr. 1138)

12

After her March, 2017, hospitalization, plaintiff reported that she mostly struggled with her cannabis addiction and her separation from her husband. (Tr. 1268) She was instructed to continue outpatient treatment and look into chemical dependency and daily treatment program. (Tr. 1269)

By April 19, 2017, plaintiff's physician noted that her anxiety was doing well and she was in supportive housing. (Tr. 560-581, 1138) However in November, 2017, plaintiff told a social worker that she was going to lose her apartment if she did not address her substance abuse. (Tr. 1650) She had not been meeting with her counselor or attending life skills groups. Instead, she was "sitting home and smoking marijuana." (Tr. 1656) Notably, plaintiff did not use on Sundays, because that was the day she visited with her children. (Tr. 1651) At that time, plaintiff was diagnosed with PTSD and cannabis/cocaine use disorder. (Tr. 1653) Stabilizing treatment, chemical dependency evaluations, and improved social support were recommended. (Tr. 1665)

Although plaintiff's periods of sobriety were brief, the record reflects a general improvement of her symptoms with chemical dependency treatment and medication management. Additionally, the balance of the record evidence strongly suggests that plaintiff's THC use was a primary impediment to her functioning. This was sufficient for the ALJ to determine that plaintiff's substance abuse was material. *See Smith v. Comm'r of Soc. Sec. Admin.*, 731 Fed. Appx. 28, 30 (2d Cir. 2018) (summary order) (plaintiff failed to demonstrate that substance abuse was not a material factor where "medical records showed that her depression, anxiety, and bipolar disorder symptoms were well-managed through medications and that her functioning improved when she underwent substance abuse treatment"); *see also Kelly v. Comm'r*, No. 19-CV-1363, 2020 WL 6945926, at *5

(E.D.N.Y. Nov. 25, 2020) (affirming ALJ's decision where, *inter alia*, the ALJ considered plaintiff's own statements regarding the effect of substance use on his symptoms and functioning, and compared plaintiff's symptoms and functioning during this period of substance abuse to his symptoms and functioning while sober); *Johnson v. Berryhill*, No. 17-cv-6436, 2018 WL 4275985, at *13 (W.D.N.Y. Sept. 7, 2018) (affirming ALJ's decision where ALJ considered psychologist and mental health counselors' treatment notes documenting mental health improvement during periods of abstinence and finding the "record was sufficient to permit the ALJ to conclude that [plaintiff's] substance use was material to the finding of disability, and substantial evidence supports the finding"); *see also Cage*, 692 F.3d at 127 (substantial evidence supports determination that claimant would not be disabled were she to discontinue drug and alcohol abuse despite absence of evidence of "extended periods of sobriety").

Plaintiff also takes issue with the absence of an opinion by a medical provider that plaintiff's substance use was material or the cause of her inability to work or function. (Dkt. No. 12-1 at 24)  Neither the Social Security Rulings nor the Second Circuit case law require such an opinion. *See* Social Security Ruling 13-2p, 2013 WL 621536, n. 19 (S.S.A.) ("The finding about materiality is an opinion on an issue reserved to the Commissioner under 20 CFR 404.1527(e) and 416.927(e). Therefore, we will not ask a treating source, a CE provider, a medical expert, or any other source for an opinion about whether DAA is material."); *see also Cage*, 692 F.3d at 126 ("We believe that such a rule [requiring that DAA materiality must be based on psychiatric opinion evidence], found nowhere in the U.S.Code or C.F.R., is unsound. It would unnecessarily hamper ALJs and

impede the efficient disposition of applications in circumstances that demonstrate DAA materiality in the absence of predictive opinions.").

For these reasons, the Court finds that the ALJ's materiality assessment was supported by substantial evidence.

Plaintiff's contention that the ALJ failed to articulate or evaluate why plaintiff did not meet or equal Listing 12.08 is also without merit.  (Dkt. No. 12-1 at 30)

At step three, the ALJ  explicitly found that if plaintiff stopped substance use, her remaining limitations would not meet or medically equal the criteria of Listings 12.04, 12.06, 12.08, or 12.15.  (Tr. 114)  In doing so, the ALJ evaluated the paragraph B criteria, which contains the same content for all four of the cited Listings.

Citing to specific examples in the record, the ALJ determined that, if substance abuse were stopped, plaintiff would have moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.  (Tr. 114)  Accordingly, he found that the paragraph B criteria were not satisfied.  (Tr. 115)  Plaintiff does not substantively challenge the ALJ's part B findings.  (Dkt. No. 12-1 at 30-36)  As such, remand is not warranted on this ground.

In sum, the  ALJ's decision is supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:        December 9, 2020
              Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge